RCVD - USDC - CHAS, SC
2026 OCT 30 AM11:00

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**

**BETTY MICHELLE A. McCLINE,**
Plaintiff,

v.

**SC COMMUNITY SCHOOLS d/b/a HEARTWOOD COMMUNITY SCHOOL,**
Defendant.

Civil Action No.: ____________________

**COMPLAINT FOR DISCRIMINATION AND RETALIATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

**JURY TRIAL DEMANDED**

Plaintiff Betty Michelle A. McCline, proceeding pro se, alleges the following:

## I. Parties, Jurisdiction, and Administrative Exhaustion

1. Plaintiff is an African American woman residing in Savannah, Georgia.
2. Defendant SC Community Schools, doing business as Heartwood Community School, employed Plaintiff at 100 Discover Lane, Ridgeland, South Carolina 29936.
3. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). Venue is proper because the relevant employment events occurred in South Carolina.
4. Plaintiff filed EEOC Charge No. 415-2026-00958, alleging discrimination based on race and sex, unequal compensation, and retaliation.
5. The EEOC issued a Determination and Notice of Rights on August 4, 2026. Plaintiff received the notice that day and brings this action within 90 days of receipt.

## II. Factual Allegations

### Employment and Executive Responsibilities

6. Defendant hired Plaintiff as Director of Operations on February 3, 2025, at an annual salary of $110,000.
7. Plaintiff had substantial professional experience in finance, human resources, school operations, compliance, and organizational leadership.

8. During her employment, Plaintiff's responsibilities expanded beyond her original position to include executive-level financial management, board reporting, organizational compliance, human resources oversight, and responsibilities previously performed by four outside contractors.
9. Plaintiff performed these expanded responsibilities while continuing to oversee day-to-day school operations.
10. Principal Jennifer Brown, a Caucasian woman, earned approximately $158,000 annually, compared with Plaintiff's $110,000 salary.
11. Plaintiff performed significant executive-level functions that overlapped with responsibilities assigned to Brown, including preparing board reports and producing work used to evaluate Brown's performance.
12. Plaintiff alleges that some of these executive responsibilities had previously belonged to Brown and were subsequently assigned to Plaintiff without corresponding compensation alignment.

**Leadership Restructuring and Selection**

13. During fall 2025, Defendant began restructuring Plaintiff's Director of Operations position into two leadership positions: Director of Business Services and Director of School Services.
14. Plaintiff had performed substantial responsibilities associated with both positions.
15. In approximately late October or early November 2025, Plaintiff questioned Brown about why she was not being considered for the Director of School Services position.
16. Plaintiff told Brown that she believed Brown and another organizational leader preferred a male candidate for that position.
17. Brown responded that Plaintiff was better suited to the Director of Business Services position.
18. Defendant did not provide Plaintiff a meaningful opportunity to compete for the Director of School Services position despite her experience and expressed interest.
19. Defendant placed a Caucasian male interim Director of School Services through a staffing agency beginning approximately January 5, 2026.
20. The interim director told Plaintiff that he had not previously worked in a school setting. Plaintiff provided him with school-specific operational guidance and institutional knowledge.
21. Defendant's written descriptions for the Director of Business Services and Director of School Services positions each listed annual compensation of $110,000. Plaintiff had performed substantial duties associated with both positions before the restructuring.

**Compensation Complaint and Termination**

22. On January 15, 2026, Plaintiff submitted a compensation-alignment memorandum requesting an annual salary of $145,000 based on her expanded responsibilities, qualifications, and executive-level contributions.
23. On January 20, 2026, Plaintiff met with Brown to discuss the compensation request.
24. During the meeting, Plaintiff questioned why she earned substantially less than Brown while performing comparable executive-level responsibilities, including duties previously assigned to Brown.
25. Plaintiff specifically referenced being a Black woman receiving lower compensation while performing executive-level work.

26. Plaintiff explained that she prepared board reports and other work products that contributed to the results on which Brown was evaluated.
27. Brown became upset during the discussion and stated that Plaintiff was not listening to her. Plaintiff responded that Brown was not listening to Plaintiff's concerns.
28. Plaintiff stated that they should agree to disagree and expressed concerns about how Defendant valued her work and contributions.
29. Plaintiff requested permission to leave work following the meeting, and Brown approved that request.
30. On January 21, 2026, Brown emailed Plaintiff stating that the compensation memorandum had been reviewed and that a salary increase would not be granted at that time.
31. Plaintiff responded that the memorandum had not been substantively reviewed during their meeting and indicated that further discussion was needed regarding the scope of her role and responsibilities.
32. Plaintiff also requested a finalized job description and formal offer letter for the newly established Director of Business Services position.
33. On January 23, 2026, three days after the compensation meeting, Defendant terminated Plaintiff's employment.
34. Defendant's termination letter cited multiple instances of unprofessionalism without identifying specific incidents in the letter.
35. Plaintiff alleges that she had not received prior formal written discipline or been placed on a performance improvement plan.
36. Plaintiff alleges that the circumstances surrounding the leadership selection, compensation decisions, and termination support an inference of discrimination and retaliation.

## III. Count One — Discrimination Based on Race and Sex (Title VII)

37. Plaintiff incorporates paragraphs 1–36.
38. Plaintiff is an African American woman who possessed substantial experience and performed executive-level responsibilities for Defendant.
39. Plaintiff alleges that Defendant compensated her less favorably than a Caucasian executive while assigning her substantial overlapping executive responsibilities.
40. Plaintiff further alleges that Defendant denied her a meaningful opportunity to compete for the Director of School Services position and selected a male candidate despite her relevant experience and expressed interest.
41. Plaintiff alleges that race and/or sex were motivating factors in the challenged compensation and leadership-selection decisions, resulting in harm to her compensation, employment opportunities, and conditions of employment.

## IV. Count Two — Retaliation (Title VII)

42. Plaintiff incorporates paragraphs 1–36.
43. In approximately late October or early November 2025, Plaintiff opposed what she reasonably believed was sex discrimination by informing Brown that leadership appeared to prefer a male candidate for the Director of School Services position.

44. On January 20, 2026, Plaintiff raised concerns about being a Black woman receiving substantially lower compensation while performing executive-level responsibilities comparable to those assigned to Brown.
45. Plaintiff alleges that she reasonably believed she was opposing discriminatory employment practices. Brown had direct knowledge of both complaints.
46. Following the January 20 compensation discussion, Defendant denied Plaintiff's compensation adjustment on January 21, 2026, and terminated her employment on January 23, 2026.
47. Plaintiff alleges that the close timing of her termination, Brown's knowledge of her objections, and the surrounding circumstances support an inference that Defendant terminated Plaintiff because she opposed perceived unlawful discrimination.
48. Plaintiff alleges that her protected opposition was a but-for cause of her termination, in violation of Title VII.

## V. Relief Requested

49. Plaintiff requests judgment in her favor and all relief authorized by law, including:

a. Back pay, lost employment benefits, and applicable interest;

b. Reinstatement or front pay, as appropriate;

c. Compensatory damages for proven emotional distress and other legally compensable harm;

d. Punitive damages to the extent permitted by law and supported by the evidence;

e. Recoverable costs and any attorney's fees authorized by law; and

f. Any other relief the Court determines just and proper.

## VI. Jury Demand

50. Plaintiff demands a jury trial on all issues triable by jury.

Respectfully submitted,

Betty Michelle McC

**Betty Michelle A. McCline**
Plaintiff, Pro Se

Date: October 5, 2026

114 Peabody Street
Savannah, GA 31407
Telephone: 901-422-2996
Email: bettymichellemc@gmail.com